**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Brown, | No. CV-18-00620-TUC-MSA |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Michael Brown filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security. (Doc. 1.) Before the Court are Brown's opening brief, the Commissioner's response brief, and Brown's reply brief. (Docs. 18, 19, 20.) For the following reasons, the Court will reverse and remand for reevaluation of Brown's application.

## Background

### I. Procedural History

Brown applied for supplemental security income on November 10, 2014, claiming the same date as his disability onset date. **AR 67, 253.**[1] His application was denied on April 20, 2015, and again on reconsideration on October 7, 2015. **AR 66, 79.** On November 17, 2015, Brown requested a hearing before an administrative law judge ("ALJ"). **AR 113.** At the hearing, held on November 1, 2017, Brown and a vocational expert ("VE") appeared and testified. **AR 33–65.** On January 4, 2018, the ALJ issued a

---

[1] "**AR**" refers to the Certified Administrative Record.

written decision finding Brown not disabled.  **AR 16–26.**  On October 30, 2018, the Appeals Council denied review.  **AR 1–4.**  Brown filed this lawsuit on December 28, 2018, seeking judicial review of the ALJ's decision.  (Doc. 1.)

## II.     Factual Background

Brown underwent a laminectomy and lumbar fusion in 2006.  **AR 275.**  He has a history of moderate levoscoliosis.  **AR 1317.**  He has had three surgeries on his left knee.  **AR 408, 466.**  He needs a full right-knee replacement, but his hepatitis C has delayed the surgery.  **AR 247, 1100.**  Brown also has a history of mental illness, including bipolar disorder, depressive disorder, anxiety disorder, anger problems, and auditory hallucinations.  **AR 1277, 1977, 1989.**  He has a history of alcohol abuse and daily intravenous use of methamphetamine.  **AR 328, 375, 380.**  He completed high school and has an associate's degree in Sociology.  **AR 40, 589.**  Brown, who is 51 years old, has spent approximately 20 years in prison.  **AR 67, 252.**

## III.    ALJ Hearing

At the hearing, Brown testified that he suffers from both physical and mental symptoms.  **AR 43.**  As to his physical symptoms, Brown explained that he has undergone back surgery and three surgeries on his left knee, and that he needs a total surgical replacement of his right knee.  **AR 45, 47.**  He stated that he can lift between 20 and 40 pounds but that he feels pain every time he lifts something, and that he can stand for "maybe" 15 to 20 minutes at a time.  **AR 45.**  As to his mental symptoms, Brown testified that he experiences paranoid delusions, including a belief that the government is "plotting" to harm him.  **AR 43.**  He stated that although his medications help, his paranoid thoughts do not completely disappear.  **AR 43.**  Brown explained that he has significant problems focusing and that he cannot sit for lengthy periods of time because his mind races constantly.  **AR 52, 54.**

The ALJ asked the VE about two hypothetical claimants with Brown's age, education, and work history.  **AR 58–60.**  The first claimant could perform light work with the following exertional limitations: he could push and pull with his right lower extremity

only occasionally; he must be allowed the use of a cane; he could be exposed to uneven terrain, unprotected heights, extreme cold, or vibration only seldomly or rarely; he could climb ramps and stairs only occasionally and never climb ladders, ropes, or scaffolds; and he could frequently balance, stoop, bend at the waist, and crouch. **AR 58.** The first claimant also had non-exertional limitations: he could be assigned only simple tasks which can be learned in 30 days or less or by a brief demonstration; the tasks assigned must be subject to minimal change; and he could have only occasional contact with coworkers and supervisors and no contact with the public. **AR 58.** The VE testified that the first claimant could not perform Brown's past work but could perform other work in the national economy, including hand packager, laundry folder, and small parts assembler. **AR 58–59.**

The second claimant had the same limitations as the first, except that the second claimant was limited to sedentary work. **AR 59.** The VE testified that the hypothetical claimant could not perform Brown's past work but could perform work as a document preparer, final assembler, and bench hand. **AR 59–60.** The VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles and Selected Characteristics of Occupations. **AR 60.**

**IV. ALJ Decision**

The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. **AR 17–26.** At step one, the ALJ found that Brown had not engaged in substantial gainful activity since the date of his application. **AR 18.** At step two, the ALJ found that Brown has the following severe impairments: bipolar, anxiety, substance abuse, and personality disorders, lumbar degenerative disc disease, and osteoarthritis. **AR 18–19.** At step three, the ALJ found that Brown does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. **AR 19–20.**

Between steps three and four, the ALJ found that Brown has the same residual functional capacity ("RFC") as the first hypothetical claimant. **AR 20–21.** In determining the RFC, the ALJ found that Brown's symptom testimony was inconsistent with the

medical evidence. **AR 21.** The ALJ gave "some weight" to the opinion of non-examining agency physician Dr. Melvin Roberts that Brown can perform light work with some limitations and "less weight" to the opinions of non-examining agency physician Dr. Charles Combs that Brown is limited to sedentary work. **AR 24.** At step four, the ALJ found that Brown has no past relevant work. **AR 24.** At step five, the ALJ, considering Brown's age, education, work experience, and RFC, found that Brown can perform other work in the national economy, and, therefore, that Brown is not disabled. **AR 25–26.**

### Legal Standard

A person is "disabled" within the meaning of the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "When considering a claim for disability benefits, the Social Security Administration is required to conduct a now-familiar five-step sequential evaluation process to determine whether a claimant is disabled and eligible for benefits." *Shaibi v. Berryhill*, 883 F.3d 1102, 1106 (9th Cir. 2017). The claimant bears the burden of proof at steps one through four; the Commissioner bears the burden at step five. *Barnes v. Berryhill*, 895 F.3d 702, 703 n.3 (9th Cir. 2018) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)).

At the first step, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If yes, the ALJ will find the claimant not disabled. *Id.* At the second step, the ALJ considers whether the claimant has a "severe" physical or mental impairment, or a combination of impairments that is "severe," that has lasted at least one year. *Id.* §§ 404.1520(a)(4)(ii), 404.1509. If not, the ALJ will find the claimant not disabled. *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ considers whether the claimant's impairments meet or equal one of the medical conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 404.1520(a)(4)(iii). If yes, the ALJ will find the claimant disabled. *Id.*

If the ALJ does not find the claimant disabled at the third step, before proceeding to the fourth step, the ALJ will determine the claimant's RFC—i.e., what the claimant can still do despite her limitations. *See Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017); 20 C.F.R. § 404.1545(a)(1). At the fourth step, the ALJ considers whether the claimant has the RFC to perform her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). If yes, the ALJ will find the claimant not disabled. *Id.* At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience and determines whether the claimant "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If yes, the ALJ will find the claimant not disabled; if not, the ALJ will find the claimant disabled. *Id.*

The ALJ's decision to deny disability benefits is subject to harmless-error review, *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017), and must be affirmed "unless it is not supported by substantial evidence or is based on a legal error," *Wellington v. Berryhill*, 878 F.3d 867, 871 (9th Cir. 2017). "Substantial evidence 'is more than a mere scintilla,' but less than a preponderance." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018) (quoting *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (per curiam)). "A reviewing court may only consider the reasons provided by the ALJ in the disability determination and 'may not affirm the ALJ on a ground upon which he did not rely.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014)).

**Discussion**

Brown contends that the ALJ erred in discounting his symptom testimony. The Court agrees that substantial evidence does not support the ALJ's reasoning.

**I. Background**

With regard to his physical impairments, Brown testified that his knees and back contribute to his inability to work. **AR 40, 43.** Brown explained that he has had back surgery and three left-knee surgeries. **AR 45, 47.** He also explained that he needs a total surgical replacement of his right knee because it has "no cartilage or meniscus." **AR 45.** As a result of his conditions, Brown explained that he is limited to lifting "maybe 20/30 pounds[,] 40 pounds." **AR 45.** However, according to Brown, "[e]very time [he] lift[s]

anything, it hurts," and he is not capable of lifting multiple times over a two-hour period. **AR 45, 53.** Brown further testified that he limps, that he cannot "walk any long distance" because even short distances cause pain, and that he can stand for a maximum of "15/20 minutes, maybe." **AR 45.** He further stated that he can do landscaping work for two to three hours at most but that he needs one day to recover afterward. **AR 53–54.**

The ALJ provided three reasons for discounting Brown's symptom testimony: Brown exercised three times per week for one to two hours; Brown sought and received only conservative treatment for his back and knees; and Brown's medical records are inconsistent with his claimed symptoms. **AR 23–24.** Brown argues that these reasons are not supported by substantial evidence.

## II. Legal Principles

There is a two-step analysis for determining whether to credit a claimant's symptom testimony. *Trevizo*, 871 F.3d at 678. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison*, 759 F.3d at 1014 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)). The claimant need not present objective evidence of the symptom itself (e.g., pain), or of its severity. *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Second, if "there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* at 1014–15 (quoting *Smolen*, 80 F.3d at 1281).

## III. Analysis

Here, the ALJ found that Brown had presented evidence of impairments that could reasonably be expected to produce his symptoms. **AR 21.** The ALJ made no finding that Brown was malingering. ***See* AR 21.** Therefore, the ALJ could reject Brown's symptom testimony only for specific, clear, and convincing reasons.

### A. Exercise

The ALJ cited to a treatment note made by one of Brown's providers on April 6,

2017: "Michael current[ly] works out 3x times a week, 1 to 2 hours, [he] will work out and work on [his] diet weekly." **AR 616.** According to the ALJ, this remark "indicates that [Brown] is quite active and is inconsistent with his allegations of disabling work limitations." **AR 23.** An ALJ may rely upon a claimant's daily activities to reject the claimant's symptom testimony if the activities either contradict the symptom testimony or involve skills that could be transferred to the workplace. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Here, however, the cited record contains no details about Brown's exercise activities. *See* **AR 616.** As a result, the ALJ had no basis for finding that Brown's activities conflict with or contradict his allegations of disabling pain. Nor is there any basis for finding that Brown's activities involve skills that could be transferred to the workplace. *See Trevizo*, 871 F.3d at 682 (holding it was error to discount claimant's symptom testimony based on childcare activities where the record contained "almost no information" about the activities).

There is evidence in the record that, at one time, Brown did weightlifting activities. Conceivably, this could conflict with Brown's complaints of knee and back pain. However, neither the record cited by the ALJ nor the ALJ's decision mentions that specific activity, nor does the ALJ's decision contain an explanation why that activity conflicts with Brown's alleged symptoms. *See Garrison*, 759 F.3d at 1014–15 (stating that the ALJ must provide "*specific*, clear and convincing reasons" for rejecting claimant symptom testimony (emphasis added) (citation omitted)). Therefore, the Court may not rely on Brown's weightlifting as support for the ALJ's conclusion. *See Luther*, 891 F.3d at 875 ("A reviewing court may only consider the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." (internal quotation marks and citation omitted)). Furthermore, it appears Brown's exercise may have consisted of low-impact cardiovascular activities, such as biking and swimming, which are not at all inconsistent with his claimed knee and back impairments. ***See*** **AR 1100** (treatment note dated March 31, 2017 (one week before the note relied upon by the

ALJ) stating Brown was encouraged to engage in low-impact exercises such as biking and swimming).

**B.    Conservativeness of Treatment**

The ALJ discounted Brown's symptom testimony because treatment of his right knee "remained conservative consisting of cortisone injections and pain medication." **AR 24.**  An ALJ may discount a claimant's testimony about the severity of her symptoms if her condition responds favorably to conservative treatment, *see Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (discounting symptom testimony where claimant's knee pain was treated with over-the-counter pain medication), or if she fails to seek more aggressive treatment for her allegedly severe condition, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (discounting symptom testimony where claimant "did not seek an aggressive treatment program").

Brown's case fits into neither circumstance.  First, Brown's knee pain was not managed with conservative treatment.  His medical records show that he suffered from "severe varus knee osteoarthritis which has not responded to conservative measures," including cortisone and Orthovisc injections and pain medications such as Oxycodone, Diclofenac, Nambumetone, and Medrol.  **AR 1707.**  Second, Brown sought aggressive treatment.  As the ALJ noted, Brown desired and agreed to a total replacement of his right knee.  **AR 24, 1100.**  Although Brown's hepatitis C has so far prevented this surgery from taking place, the procedure can hardly be described as conservative.  *See* **AR 1100.**

The ALJ recited certain facts from Brown's treatment records, including that Brown had normal strength and range of motion in his knees.  **AR 24.**  It is error for an ALJ to selectively quote from a treatment record to reach a conclusion of non-disability.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).  More generally, it is error to isolate treatment notes without considering them "in the broader context of [the claimant's] impairment." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016).   Here, the ALJ not only failed to consider Brown's condition and treatment records as a whole, she cherrypicked the foregoing facts from the same treatment records stating that Brown's knee

pain has not responded to conservative measures. ***See* AR 1707–09.** Therefore, the ALJ's reasoning is not supported by substantial evidence.

## C.  Consistency of Medical Record

The ALJ discounted Brown's symptom testimony because "diagnostic imaging only revealed . . . minimal degenerative changes in the bilateral knees, which is inconsistent with [Brown's] allegations of disabling pain." **AR 23.** An ALJ may properly reject claimant symptom testimony based on inconsistencies between the testimony and relevant medical evidence. *See Parra*, 481 F.3d at 750 (holding ALJ properly rejected claimant's complaints of knee pain based on medical records showing normal knee function).

Here, the ALJ's analysis of the existing medical evidence is not supported by substantial evidence. It is error for an ALJ to support an unfavorable decision by selectively quoting from a claimant's medical records while ignoring entries that indicate continued, severe impairment. *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001). Here, the ALJ's remark came after discussion of records from March and May 2015. *See* **AR 23** (citing **AR 407–09, 414, 416, 495, 497, 1313**). These records indicate that Brown had "mild degenerative changes" in his knees and back. ***See* AR 495–97.** However, the same records also indicate that Brown's left knee had crepitus (grating or popping sounds and sensations due to the presence of air) and an "extremely" limited range of motion, and that Brown's right knee had laxity (looseness of knee ligaments) and subluxation (partial dislocation of the kneecap) and was positive for the anterior drawer test (indicating an ACL injury). **AR 409.** The ALJ improperly ignored these notes. ***See* AR 23**; *Holohan*, 246 F.3d at 1205, 1208 (holding ALJ erred by selectively reading treatment records); *Ghanim*, 763 F.3d at 1164 (explaining that it is error to cherry-pick from treatment records).

More broadly, "[w]hile ALJs obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must in fact constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard." *Garrison*, 759 F.3d at 1018 (emphasis in original). In other words, it is

improper to "single[] out a few periods of temporary well-being from a sustained period of impairment and rel[y] on those instances to discredit" a claimant. *Id.* Here, the records describing Brown's mild degenerative changes were created during a two-month period in early 2015. Although relevant, these examples are not representative of Brown's condition as a whole.

Between August 2015 and March 2017, Brown sought treatment for his knee pain at Sierra Vista Medical Group. The records for those visits consistently note that Brown suffered from severe knee impairments, and that Brown's pain was not being managed with conservative treatment. **AR 1126–29** (August 2015 note stating that Brown rated his pain as a 7 out of 10, and that Brown received a cortisone injection for "right knee severe varus osteoarthritis"), **1121–23** (October 2015 note stating that Brown rated his pain as a 7, and that conservative treatment had thus far "failed"), **1118–20** (December 2015 note stating that Brown rated his pain as a 7, and that Brown received an Orthovisc injection), **1115–17** (February 2016 note stating that Brown rated his pain as a 6, and that Brown received a second Orthovisc injection), **1111–14** (June 2016 note stating that Brown rated his pain as a 6, and that Brown received a third Orthovisc injection), **1108–10** (September 2016 note stating that Brown rated his pain as a 6, and that Brown was started on a new pain medication, Tramadol), **1104–07** (November 2016 note stating that Brown had "tried nonsteroidal anti-inflammatories, activity modification, and cortical steroid injections, and physical therapy" without success); **1100–03** (March 2017 note stating that Brown would be undergoing a surgical replacement of his right knee pending treatment of his hepatitis C). In September 2017, a different provider noted that Brown was ambulating with a slight limp and had crepitus, stability, and range-of-motion issues in both knees. **AR 1887.** These records indicate a worsening of Brown's knee conditions, yet the ALJ did not analyze them before determining that Brown's testimony is inconsistent with his medical records.

To summarize, the ALJ made two errors. The ALJ selectively quoted from Brown's medical records to downplay the severity of his knee condition. The ALJ then found those selectively read records representative of Brown's overall condition, when the record as a

whole indicates a higher level of severity. *See Garrison*, 759 F.3d at 1018. Therefore, the ALJ's reasoning is not supported by substantial evidence.

### Conclusion

The ALJ failed to provide specific, clear, and convincing reasons for rejecting Brown's symptom testimony. This error was harmful. The ALJ found that Brown is capable of performing light work with some exertional and environmental limitations. **AR 20.** However, the ALJ made no specific findings on Brown's ability to perform the standing and walking requirements of light work. *See* **AR 20–21.** Contrary to the ALJ's assumption, if Brown's testimony is credited, he would be incapable of performing these requirements. *See* **AR 45, 53–54** (Brown's testimony that he can stand for 15 to 20 minutes at a time for up to three hours); Social Security Ruling 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983) (stating that light work "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday").

**IT IS ORDERED** that the decision of the Commissioner is **reversed**. This case is **remanded** for reevaluation of Brown's application. The Clerk of Court is directed to enter judgment accordingly and close this case.[2]

Dated this 31st day of January, 2020.

Honorable Maria S. Aguilera
United States Magistrate Judge

---

[2] Brown has raised another issue regarding the ALJ's treatment of the opinions of the non-examining agency physicians. Given the Court's findings, review of that issue is unnecessary.

- 11 -